I received a call from Ms. Chuggin yesterday. I reviewed the briefs and the record is quite clear. The parties have extensively briefed all the issues, unless the Court had any questions for me. Well, I have some questions in terms of that. It would seem to me that possibly some of ALJ's reasons supporting the adverse credibility are problematic in light of the record. And which of those, do you see any of them as being problematic? Well, we look at the record as a whole and we look at to see if whether there's clear convincing reasons to support the credibility finding here, which was adverse to Mr. Schow. When I reviewed the record, one of them was stopping treatment, right? And the insurance company wouldn't let him go to treatment. So how can you say that's... The insurance company stopped paying for his physical therapy. It's unclear whether he had stoppage. The record doesn't clearly show, I will concede, whether he did not receive treatment for eight months. There's an eight-month gap, whether that was related to medical insurance issues. Well, it seems that it's a pretty good inference from the standpoint if your insurance company won't pay and you're not working, that that certainly seems more logical than the, that he just decided he didn't need treatment anymore. Possibly, yes. It could have been more developed below. The exaggeration, it wasn't quite malingering. And I think, well, in fact, didn't Nurse Wynn say that he wasn't malingering? Right. And so, but there was inconsistencies on presentation. And that's under Fair v. Bowen. That's a fair, under Fair v. Bowen, that's an appropriate means to discredit Mr. Schow. He had non-reproducible physical findings. He had interesting posturing that was not consistent with any known pathology. That's an okay, that's a valid reason for the ALJ to point out that there was inconsistencies on presentation. I'd like you to assume, for the sake of this question, that more than half of the reasons given by the ALJ for the adverse credibility on the extent of pain are not supported by substantial evidence. How do we determine whether that magnitude of an error is harmless? Under Stout, looking at whether the errors were inconsequential to the ultimate decision? Yes. I mean, we know from Batson and Stout how to formulate the test, but how in real life do we apply it? Well, there's also, our office handled the Batson case, and that was, I didn't handle that personally, but reviewing, if I recall, looking at the claimant, he watched six hours of television per day, and that reason was upheld as harmless. It was what the Court relied on. No, we're familiar with those cases, but how do we apply those principles to a situation in which, under my hypothetical to you, I know you aren't going to concede this, but if most of the reasons are not proper or do not provide substantial evidence, how do we weigh that in the harmless error analysis? Right. Under the rubric of the harmless error doctrine, and I just read, yes, Stout, Kerry, but I was looking for my notes on that, and I guess what I recall from Stout reading, and I will review it more for future arguments, is that where the harmless error mistake is non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. So here, if, so if, so if not all the reasons are valid, but we have sufficient reasons remaining to show that Mr. Schall was not entirely credible, we would ask that you affirm that. I'm not sure I understand your response, Ms. Wolff. The problem is that, as I understand it, there were eight reasons given, and as I look at them, only three, at least, again, I'm speaking for myself, but only three of them seem to be valid. Are you saying as long as one of the eight is valid, we can affirm or not? Well, I didn't – I'm not sure it can be reduced to an exact enumerated finding regarding the credibility finding, but if we look at – Well, then what kind of a test do we apply? Well, we look at whether it was, I guess, prejudicial to Mr. Schall and whether it affected the ALJ's disability conclusion of his claim. Well, essentially, we have to rely on our own experience in terms of how, when you factor those out, you know, what does it look like you have left? And if what you have left, if you really in your gut feel at that point the ALJ would not have reached the same result, then you're in trouble. Right. We also have some other good reasons here that the ALJ stated. He co-wrote a book on and was working on marketing that book, so his activities weren't as limited as he portrayed. So he had not vigorous or robust activities of daily living, but he was engaging in activities that suggested that he wasn't as debilitated as he alleged. Well, speaking for myself, too, I had another issue with how the ALJ treated the lay witnesses from the standpoint that essentially the ALJ coupled in the adverse credibility and said that these – since the petitioner wasn't credible in terms of his description of his pain, said basically that the lay witnesses were relying on what the petitioner said about his pain, but it seemed to me that some of what those lay witnesses were saying, even if you leave the adverse credibility intact, is that they were making observations that it would be, you know, you could tell me that you're in a lot of pain. Maybe that I'm relying on your pain, but let's say every day I see you and you seem to wince when you get up and down or I watch, you know, how far you can walk and, you know, it seems that his mother and his friend in describing certain things, it wasn't just relying on what the petitioner said. In this case, that wasn't being used in a way that they could – and it has a bootstrap related to money. Well, bootstrap's not a good word under the law. No, but looking at the case, it's not – it's not – it's not the most perfect ALJ decision, granted. But looking at the record and the ALJ's pain and credibility behind it, there was – there were enough reasons remaining. It's not such that some negative credibility differences were supported. But that isn't what the cases say. They don't just say if something's left after you take it all away. It's whether we think that if the ALJ had two or three of the reasons available and not eight, whether the ALJ probably would have made the exact same ruling or not. And if the answer is not or probably not or we can't be sure, why wouldn't that have to be remanded for another look under the proper standard? Okay. It has to be germane, but it has to be true, doesn't it? Regarding the depression and the non-exertional limitations. So getting beyond the credibility, that would be potentially something that would be, if we want to remand, something that should be addressed, is whether he was limited to simple and repetitive work. That's – You're suggesting we should remand? If you were to remand, that actually is, if we look at this case, something that should be potentially developed without conceding the point. Anything further? No. Thank you, counsel. Thank you. The case just argued will be submitted for decision. We will hear argument now in Scott v. Jackson County.
judges: O'scannlain, Graber, Callahan